Revised March 19, 1999

**UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

**No. 98-21072
Summary Calendar**

**APPLICATION OF THE REPUBLIC OF KAZAKHSTAN,**

**Petitioner-Appellee,**

**v.**

**BIEDERMANN INTERNATIONAL,**

**Claimant-Appellant,**

**Appeal from the United States District Court for the
Southern District of Texas**

March 17, 1999

Before HIGGINBOTHAM, JONES, and BARKSDALE, Circuit Judges:

EDITH H. JONES, Circuit Judge:

In support of a proceeding before the Arbitration Institute of the Stockholm Chamber of Commerce, the Republic of Kazakhstan ("Kazakhstan") instituted the underlying action in the Southern District of Texas for assistance in discovery pursuant to 28 U.S.C. § 1782. Kazakhstan requested that the district court order Murdock Baker, Jr., not a party to the arbitration, to submit to a deposition and produce certain documents related to Kazakhstan's opponent Biedermann International ("Biedermann"). The district court ordered the requested discovery and denied

Biedermann's request for reconsideration and motion for emergency stay. On expedited appeal of the district court's final order,[1] this court stayed the discovery. Having reviewed the parties' submissions and examined the language and history of § 1782, we elect to follow the Second Circuit's recent decision that § 1782 does not apply to private international arbitrations. See <u>National Broad. Co. v. Bear Stearns & Co.</u>, ___ F.3d ___, No. 98–7469, 1999 WL 27053. (2d Cir. Jan. 26, 1999).

Review of the scope of § 1782 is <u>de novo</u>. See <u>Pritchard v. U.S. Trustee (In re England)</u>, 153 F.3d 232, 234 (5th Cir. 1998). When interpreting a statute, this court examines the plain, common sense meaning of the statute's language. See <u>id.</u> at 235 ("Courts properly assume, absent sufficient indication to the contrary, that Congress intends the words in its enactments to carry their ordinary, contemporary, common meaning.") (internal punctuation and citations omitted). If this language is unambiguous, the inquiry is ended. See <u>United States v. Investment Enters., Inc.</u>, 10 F.3d 263, 274 (5th Cir. 1994) ("Except in rare circumstances, judicial inquiry is complete when the terms of a statute are unambiguous."). As the Second Circuit observed, however, the meaning of "foreign or international tribunal" is ambiguous and must be construed in light of the background and purpose of the statute.

---

[1]<u>See</u> 28 U.S.C. § 1291; <u>Okubo v. Reynolds (In re Letters Rogatory from the Tokyo Dist. Prosecutor's Office)</u>, 16 F.3d 1016, 1018 n.1 (9th Cir. 1994).

From its adoption in 1855 through its amendment in 1964, § 1782 permitted a district court to provide discovery assistance only to a party involved in judicial proceedings pending before a "court in a foreign country."[2]  In 1964, Congress amended the statute.  Section 1782 now reads, in pertinent part:

> The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a <u>proceeding in a foreign or international tribunal</u>.  The order may be made . . . upon the application of any interested person . . . .

28 U.S.C. § 1782 (emphasis added).  The decision to substitute the term "tribunal" for "court" was deliberate, evidencing Congress's intention to expand the discovery provision beyond "conventional courts" to include "foreign administrative and quasi-judicial agenc[ies]."  <u>See</u> S. Rep. No. 1580, § 9 (1963), <u>reprinted</u> <u>in</u> 1964 U.S.C.C.A.N. 3782, 3788.

But the new version of § 1782 was drafted to meld its predecessor with other statutes which facilitated discovery for

---

[2]Act of May 24, 1949, ch. 139, § 93, 63 Stat. 89, 103 (1949); <u>see</u> <u>also</u> Act of June 25, 1948, ch. 646, § 1782, 62 Stat. 869, 949 (1948) ("any civil action pending in any court in a foreign country"); Act of March 3, 1863, ch. 95, § 1, 12 Stat. 769, 769 (1863) ("in any suit for the recovery of money or property . . . in any foreign court . . . in which a government of such foreign country shall be a party"); Act of March 2, 1855, ch. 140, § 2, 10 Stat. 630, 630 (1855) ("from any court of a foreign country").  For an extensive discussion of § 1782's legislative history, see <u>National Broad. Co.</u>, 1999 WL 27053, at *4-6, and <u>In re: Application of Nat'l Broad. Co.</u>, No. M-77 (RWS), 1998 WL 19994, at *4-7 (S.D.N.Y. Jan. 21, 1998).

international government-sanctioned tribunals. See, e.g., National Broad. Co., 1999 WL 27053, at *5-*6 (discussing combination of § 1782 with 22 U.S.C. §§ 270-270g). Neither the report of the Commission that recommended what became the 1964 version of § 1782[3] nor contemporaneous reports of the Commission's director[4] ever specifically goes beyond these types of proceedings to discuss private commercial arbitrations. There is no contemporaneous evidence that Congress contemplated extending § 1782 to the then-novel arena of international commercial arbitration.[5] References

---

[3]Section 1782's amendment in 1964 arose from recommendations of the Commission and Advisory Committee on International Rules of Judicial Procedure. See Act of Sept. 2, 1958, Pub. L. No. 85-906, 72 Stat. 1743, 1743-45 (1958); see also National Broad. Co., 1999 WL 27053, at *4.

[4]Professor Hans Smit directed the Commission's work. Following Congress's 1964 amendment of § 1782, Smit noted the expansion of the statute to include, inter alia, "international arbitral tribunals." See Hans Smit, International Litigation Under the United States Code, 65 Colum. L. Rev. 1015, 1027 n.73 (1965); see also id. at 1026 n.71 ("'tribunal' embraces all bodies exercising adjudicatory powers, and includes . . . administrative and arbitral tribunals"). See, also Hans Smit and Arthur R. Miller, International Co-Operation in Civil Litigation -- A Report on the Practices and Procedures Prevailing in the United States (1961).

[5]Subsequent articles by Professor Smit, however, champion the majority view of commentators that private commercial arbitrations are within § 1782. See, e.g., Hans Smit, American Assistance to Litigation in Foreign and International Tribunals: Section 1782 of Title 28 of the U.S.C. Revisited, 25 Syracuse J. Int'l L. & Com. 1, 5-8 (1998) (discussing application of § 1782 to private arbitrations and criticizing In re Application of Medway Power Ltd., 985 F. Supp. 402 (S.D.N.Y. 1997), and In re: Nat'l Broad. Co.); Jonathan Clark Green, Are International Institutions Doing Their Job?, 90 Am. Soc'y Int'l L. Proc. 62, 70-71 (1996) ("it is hard to think of an international tribunal other than a court or an arbitration panel"); Walter B. Stahr, Discovery Under 28 U.S.C. §

4

in the United States Code to "arbitral tribunals" almost uniformly concern an adjunct of a foreign government or international agency.[6]

Moreover, the term "tribunal" lacks precision and demands judicial interpretation consistent with the statute's purpose. "Tribunal" has been held not to include even certain types of fact-finding proceedings, like those enforcing tax assessment and currency exchange regulations, conducted under the auspices of foreign governments. See, e.g., Fonseca v. Blumenthal, 620 F.2d 322, 323 (2d Cir. 1980) (Superintendent of Exchange Control of Colombia); In re Letters Rogatory Issued by Dir. of Inspection of Gov't of India, 385 F.2d 1017, 1020-22 (2d Cir. 1967) (Indian income tax officer) (Friendly, J.); see also Okubo, 16 F.3d at 1018-19 (Tokyo District Prosecutor's Office not "tribunal"). To the extent that these cases distinguished between an impartial adjudicative proceeding, the type covered by § 1782, and the inquiry of an officer with "an institutional interest in a

_____

1782 for Foreign and International Proceedings, 30 Va. J. Int'l L. 597, 619-20 (1990) ("It is clear . . . that the term 'international tribunal' includes an international court, arbitration or other tribunal located in a foreign country."); Peter F. Schlosser, Coordinated Transnational Interaction in Civil Litigation and Arbitration, 12 Mich. J. Int'l L. 150, 170 n.84 (1990) (scope of "tribunal" should include international arbitrations).

[6]See, e.g., 16 U.S.C. § 973n ("In the event of a dispute requiring the establishment of an arbitral tribunal . . . ."); 22 U.S.C. § 290k-11(a) ("An award of an arbitral tribunal resolving a dispute . . . ."); 22 U.S.C. § 1650a ("An award of an arbitral tribunal rendered pursuant to chapter IV . . . .").

particular result",[7] one might infer that private international arbitrations ought to be covered. The opinions, however, also demonstrate inherent limits on the nature of a "tribunal"; thus, not every conceivable fact-finding or adjudicative body is covered, even when the body operates under the imprimatur of a foreign government.

Skepticism about extending § 1782 to private international arbitrations also results from a comparison with domestic United States arbitration procedure. As other courts have noted,[8] domestically constituted arbitration panels, but not any "interested party," can invoke federal court jurisdiction to compel discovery in limited circumstances. Further, federal courts have a duty to enforce arbitrators' summonses only within the federal district in which the arbitrators, or a majority of them, are sitting. See 9 U.S.C. § 7. It is not likely that Congress would have chosen to authorize federal courts to assure broader discovery in aid of foreign private arbitration than is afforded its domestic dispute-resolution counterpart. There is also a possibility that Federal Arbitration Act § 7 and 28 U.S.C. § 1782 conflict, if the latter section encompasses foreign and international private

---

[7]Fonseca, 620 F.2d at 324 (quoting In re Letters Rogatory, 385 F.2d at 1020).

[8]See, e.g., National Broad. Co., 1999 WL 27053, at *2-*3 ("The methods for obtaining evidence under [9 U.S.C.] § 7 are more limited than those under [28 U.S.C.] § 1782 in two, and possibly three, ways."); Medway Power Ltd., 985 F. Supp. at 404-05.

6

arbitrations.  Section 7 is a "residual" provision, to the extent not inconsistent with the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, 9 U.S.C. § 201, 208, and the Inter-American Convention on International Commercial Arbitration, 9 U.S.C. §§ 301, 307.  The Second Circuit aptly noted that the differences in available discovery could "create an entirely new category of disputes concerning the appointment of arbitrators and the characterization of arbitration disputes as domestic, foreign, or international."  See National Broad. Co., 1999 WL 27053, at *5.

Empowering arbitrators or, worse, the parties, in private international disputes to seek ancillary discovery through the federal courts does not benefit the arbitration process. Arbitration is intended as a speedy, economical, and effective means of dispute resolution.  The course of the litigation before us suggests that arbitration's principal advantages may be destroyed if the parties succumb to fighting over burdensome discovery requests far from the place of arbitration.  Moreover, as a creature of contract, both the substance and procedure for arbitration can be agreed upon in advance.  The parties may pre-arrange discovery mechanisms directly or by selecting an established forum or body of governing principles in which the conventions of discovery are settled.[9]  Resort to § 1782 in the

_____

[9]See U.N. Commission on International Trade Law, Model Law on International Commercial Arbitration, art. 19 (1994).  Article 19

7

teeth of such agreements suggests a party's attempt to manipulate United States court processes for tactical advantage.[10]  Section 1782 need not be construed to demand a result that thwarts private international arbitration's greatest benefits.

For the foregoing reasons, we conclude that the term "foreign and international tribunals" in § 1782 was not intended to authorize resort to United States federal courts to assist discovery in private international arbitrations.  The provision was enlarged to further comity among nations, not to complicate and undermine the salutary device of private international arbitration.

**REVERSED.**

---

provides the parties with wide discretion to develop the procedures to be employed in an arbitral proceeding:

> Subject to the provisions of this Law, the parties are free to agree on the procedure to be followed by the arbitral tribunal in conducting the proceedings.  * * * Failing such agreement, the arbitral tribunal may, subject to the provisions of this Law, conduct the arbitration in such manner as it considers appropriate. The power conferred upon the arbitral tribunal includes the power to determine the admissibility, relevance, materiality and weight of any evidence.

See id.; see also American Arbitration Ass'n, Commercial Arbitration R. § 31 (1996) ("The parties may offer such evidence as is relevant and material to the dispute and shall produce such evidence as the arbitrator may deem necessary to an understanding and determination of the dispute.  An arbitrator or other person authorized by law to subpoena witnesses or documents may do so upon the request of any party or independently.").

[10]See National Broad. Co., 1999 WL 27053, at *6 ("If the parties to a private international arbitration make no provision for some degree of consensual discovery inter se in their agreement to arbitrate, the arbitrators control discovery, and neither party is deprived of its bargained-for efficient process by the other party's tactical use of discovery devices").

8