**In re: Application of BABCOCK BORSIG AG for Assistance Before a Foreign Tribunal.**

**No. 08–mc–10128–DPW.**

United States District Court, D. Massachusetts.

Oct. 30, 2008.

Steven J. Comen, James O. Fleckner, Goodwin Procter LLP, Boston, MA, for Babcock Power, Inc.

Mary–Beth McCormack, Samuel M. Starr, Mintz, Levin, Cohn, Ferris, Glovsky & Popeo, PC, Boston, MA, for Babcock–Hitachi K.K.

John F. Welsh, III, Bello, Black & Welsh LLP, Boston, MA, for Babcock Borsig AG.

*MEMORANDUM AND ORDER*

DOUGLAS P. WOODLOCK, District Judge.

Babcock Borsig AG ("BBAG"), a German corporation, moves to compel Babcock Power Inc. ("BPI"), a corporation headquartered in Massachusetts, to produce documents and give testimony pursuant to 28 U.S.C. § 1782(a) for use in a potential arbitration between BBAG and Babcock–Hitachi K.K. ("Hitachi"), a Japanese corporation, in the International Chamber of Commerce International Court of Arbitration ("ICC"). Hitachi and BPI both object to BBAG's motion, claiming that: (1) BBAG's settlement agreement with BPI from prior litigation precludes the discovery request, (2) § 1782(a) does not authorize discovery orders for proceedings before private arbitral bodies such as the ICC, and (3) even if discovery is authorized, the court should exercise its discretion under § 1782(a) to deny BBAG's motion. For the reasons discussed below, although I conclude that the settlement agreement does not bar BBAG's discovery request and that § 1782(a) would permit discovery for proceedings before the ICC, I nevertheless will deny BBAG's motion to compel without prejudice on discretionary grounds. I leave open the possibility of

reconsidering this issue at some future time if the ICC indicates receptivity to the requested discovery materials.

## I. FACTUAL BACKGROUND

### A. The parties

BBAG is a German stock corporation and the ultimate holding company of the Babcock Borsig Group, an international supplier of power and environmental engineering. In 2002, in connection with insolvency proceedings in the German courts, BBAG undertook reorganization measures to facilitate the sale of its assets. As part of these reorganization efforts, BBAG sold certain United States business operations to BPI, a Massachusetts corporation. In 2003, BBAG also sold business operations in the field of power engineering to Hitachi, a Japanese corporation.

### B. Prior litigation between BBAG and BPI

In May 2003, BBAG and BPI became engaged in litigation in this court, docketed as 04–10825–RWZ, over conflicting interpretations of the Non–Competition Agreement that was part of their 2002 transaction. In particular, BBAG alleged that BPI, relying on an erroneous interpretation of the agreement, had interfered with BBAG's sale of assets to Hitachi in April 2003. This litigation continued for nearly three years and involved numerous contentious discovery disputes that ultimately prompted the trial judge to appoint a Special Master to resolve them. In February 2006, BBAG and BPI reached a settlement agreement which included a release by BBAG of BPI from "rights and demands of any nature whatsoever ... arising out of, in connection with, or related to the Litigation."

### C. BBAG's potential arbitration with Hitachi

BBAG now contends that Hitachi made material misrepresentations in order to achieve a price reduction in its 2003 purchase of BBAG's business assets. In particular, BBAG claims that Hitachi actively misled BBAG regarding the substance of negotiations between Hitachi and BPI that occurred while BBAG's sale to Hitachi was still pending. According to BBAG, it first became aware of Hitachi's alleged misconduct in January 2006, while deposing BPI's CEO in connection with the litigation between BBAG and BPI.

In August 2007, BBAG wrote to Hitachi, seeking compensation for alleged breach of contract and tort in connection with Hitachi's misrepresentations. Hitachi rejected this demand. Under the terms of BBAG's 2003 sale of assets to Hitachi, all disputes arising from the transaction were subject to arbitration in Dusseldorf, Germany, before a three-member panel of the ICC. BBAG has not yet commenced an ICC arbitration action against Hitachi but asserts that it "contemplate[s]" it will do so.

In April 2008, BBAG formally requested BPI's cooperation in providing discovery materials related to the anticipated arbitration action. When BPI refused, BBAG filed an application in this court pursuant to 28 U.S.C. § 1782(a) for an order to issue subpoenas against BPI for the production of documents and the deposition of a corporate representative. I granted BBAG's application. Thereafter, Hitachi filed a motion to intervene, which I granted, for the purpose of submitting a motion to quash the subpoenas served on BPI. Meanwhile, BPI sent a letter to BBAG objecting to the subpoenas. BBAG responded by filing the motion to compel discovery pursuant to 28 U.S.C. § 1782(a), which is now before me.

## II. DISCUSSION

### A. BBAG's settlement agreement

■ Hitachi and BPI claim that BBAG's settlement agreement with BPI from February 2006 forecloses BBAG's discovery requests. In pertinent part, the agreement indicates that BBAG agreed to: "unconditionally, irrevocably and completely release remise and forever discharge BPI ... from any and all claims, actions, causes of action, suits, charges, debts, dues, obligations ... expenses, rights and demands of any nature whatsoever ... arising out of, in connection with, or related to the Litigation." I find that this release does not bar BBAG's discovery requests from BPI.

The interpretation of releases is governed by principles of contract law. *See Ismert & Assocs., Inc. v. New England Mut. Life Ins. Co.*, 801 F.2d 536, 540 (1st Cir.1986). In accordance with the express terms of BBAG and BPI's settlement agreement, the release at issue here is governed by Massachusetts law. *See ePresence, Inc. v. Evolve Software, Inc.*, 190 F.Supp.2d 159, 162 (D.Mass.2002) ("[A]bsent exceptional circumstances or a manifest public policy conflict, Massachusetts courts honor contractual choice-of-law provisions.") (*citing Northeast Data Sys., Inc. v. McDonnell Douglas Computer Sys. Co.*, 986 F.2d 607, 610 (1st Cir.1993)). The parties have cited, and I have found, only one Massachusetts state court case addressing whether a general release, such as the one agreed to by BBAG, encompasses the release of discovery rights in connection with a claim against a third party. In *Sumner–Mack v. City of Cambridge*, 12 Mass.L.Rptr. 243, 2000 WL 1473136 (Mass.Super.Ct.2000), the court held, without extended explanation or analysis, that "the general release, while protecting the [defendant] against further suit in the matter, does not exempt [the defen-

dant] from discovery requests."[1] Although *Sumner–Mack* does support BBAG's interpretation of the release at issue here, it does not definitively settle the issue as a matter of Massachusetts law.

Courts applying the law of other jurisdictions have variously interpreted the effect of similar general releases on discovery rights. In *Dart Industries Co., Inc. v. Westwood Chemical Co., Inc.*, 649 F.2d 646, 648 (9th Cir.1980), a case heavily relied on by Hitachi and BPI, the Ninth Circuit held that a party's release of "any rights it has or may hereafter have" foreclosed later discovery against the released party. The court concluded that this language was sufficiently broad that the releasing party "gave up far more than its right of discovery against Dart. It gave up everything." *Id.* A strongly worded dissent in *Dart Industries,* however, characterized the majority's holding as "contrary to all general rules of contract interpretation, and contrary to the general policy in favor of discovery." *Id.* at 652–53 (Anderson, J., dissenting). In later litigation involving the same parties and subject matter, the Sixth Circuit appeared to concur with the *Dart Industries* dissent. *See Westwood Chem. Co., Inc. v. Kulick,* 656 F.2d 1224, 1231 (6th Cir.1981). Although the Sixth Circuit ultimately decided *Westwood Chemical* on res judicata grounds, it observed that discovery rights were not relinquished by a general release that "neither discusses nor mentions discovery." *Id.* Similarly, *Isetts v. Borough of Roseland,* 364 N.J.Super. 247, 835 A.2d 330, 338–39 (N.J.Super.Ct.App.Div.2003), found that "a general release which does not expressly include a waiver of discovery cannot serve to limit the scope of discovery

in the future pursuit of an unreleased claim."

I find the reasoning of *Westwood Chemical* and *Isetts*—and the conclusion of *Sumner–Mack*—more persuasive than the approach of the *Dart Industries* majority. Although the release here purports to encompass "rights and demands of any nature whatsoever," traditional rules of contract interpretation require such broad language to be read in relation to its context within the release. *See, e.g., Titan Holdings Syndicate, Inc. v. City of Keene,* 898 F.2d 265, 268 (1st Cir.1990). As the court observed in *Isetts,* "[w]ithout modification derived from accompanying words, a broad view of the word 'right' can lead to absurd results. For example, did this release intend to cause the waiver of 'natural rights' or 'civil rights'?" 835 A.2d at 336. The more specific terms of BBAG's release deal with causes of action and obligations relating to the underlying claims at issue in the litigation between BBAG and BPI. Even if BBAG's potential arbitration involves a similar set of underlying facts, I find that the release does not include BBAG's right to seek from BPI, as a third party, discovery relating to its unreleased claims against Hitachi.

## B. *Authority under § 1782(a) to order discovery in connection with a private arbitration*

■ Section 1782(a) provides that "[t]he district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal." The party seeking discovery must show that: 1) the discovery is sought from a person who resides or is found in

---

**1.** Under the release at issue in *Sumner–Mack,* the plaintiff released the defendants from "all actions, causes of action, suits, debts, dues

... controversies, agreements, promises, claims, charges, complaints and demands whatsoever of every name and nature...."

the same district as the court to which the application is made, 2) the discovery is for use in a proceeding before a foreign tribunal, and 3) the applicant is a foreign or international tribunal or an "interested person." *See Schmitz v. Bernstein Liebhard & Lifshitz, LLP*, 376 F.3d 79, 83 (2d Cir.2004). When all three of these elements are met, § 1782(a) "authorizes, but does not require," a district court to grant an application for discovery. *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 247, 124 S.Ct. 2466, 159 L.Ed.2d 355 (2004). The only one of these elements at issue in this case is whether the ICC is properly classified as a "foreign or international tribunal" under the statute.[2]

■ The Supreme Court addressed the question of what constitutes a "tribunal" under § 1782(a) relatively recently in *Intel*. The Court held that the Commission of the European Communities (the "Commission") was a "tribunal" for purposes of the statute. *Id.* at 257–58, 124 S.Ct. 2466. The Commission "is the executive and administrative organ of the European Communities" and as such "exercises responsibility over the wide range of subject areas covered by the European Union treaty" including "treaty provisions, and regulations thereunder, governing competition." *Id.* at 250, 124 S.Ct. 2466. (internal quotations and citations omitted).[3] In evaluating the status of the Commission under § 1782(a), the Court emphasized the history of the statute, and in particular its 1964 Amendment, which broadened the statute's scope from any foreign "*judicial* proceeding" to any "proceeding in a foreign or

international *tribunal.*" *Id.* at 258, 124 S.Ct. 2466 (emphasis added). The Court explained that "Congress understood that change 'to provid[e] the possibility of U.S. judicial assistance in connection with [administrative and quasi-judicial proceedings abroad].'" *Id.* (alteration in original) (citation omitted). With this in mind, the Court held that the Commission was a "tribunal" for purposes of § 1782(a) "to the extent that it acts as a first-instance decisionmaker," *id.* at 258, 124 S.Ct. 2466, in a "proceeding that leads to a dispositive ruling, *i.e.*, a final administrative action both responsive to the complaint and reviewable in court." *Id.* at 255, 124 S.Ct. 2466.

The Court in *Intel* did not directly address whether private arbitral bodies like the ICC qualify as "tribunals" under § 1782(a). But the Court's reasoning and dicta strongly indicate that these types of adjudicative bodies also fall within the statute. The ICC, like the European Commission, is a "first-instance decisionmaker" that conducts proceedings which lead to a dispositive ruling. The parties agree that the ICC has the authority to hear the dispute between BBAG and Hitachi, to weigh evidence, and to issue a decision that is binding on the parties. Furthermore, the term "tribunal," which was added to § 1782(a) in 1964 to broaden the statute's scope, is commonly used and understood to describe arbitral bodies. *See In re Roz Trading Ltd.*, 469 F.Supp.2d 1221, 1225–26 (N.D.Ga.2006) (collecting cases and authorities). In fact, in discuss-

**2.** The parties do not dispute that BPI resides in the District of Massachusetts or that BBAG is an "interested person" for purposes of § 1782(a).

**3.** The applicant in *Intel* filed an antitrust complaint with the Directorate–General for Competition of the Commission, who serves as "the European Union's primary antitrust law

enforcer." *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 250, 124 S.Ct. 2466, 159 L.Ed.2d 355 (2004). In pursuit of that complaint, and while an investigation was still ongoing, the applicant filed for a discovery order from a federal district court pursuant to § 1782(a). *Id.* at 246, 124 S.Ct. 2466.

ing the meaning of the term "tribunal" under § 1782(a), the Court in *Intel* favorably quoted an article by Professor Smit for the proposition that "[t]he term 'tribunal' ... includes investigating magistrates, administrative and *arbitral tribunals*, and quasi-judicial agencies, as well as conventional civil, commercial, criminal, and administrative courts." [4] *Id.* at 258, 124 S.Ct. 2466 (alteration in original) (emphasis added) (quoting Hans Smit, International Litigation Under the United States Code, 65 Colum. L.Rev. 1015, 1026–27 (1965)). Although this quotation in *Intel* is as a formal matter dicta, its considered inclusion offers meaningful insight regarding the Supreme Court's view of arbitral bodies in the context of § 1782(a).

Two district court cases decided after *Intel* followed similar reasoning to hold that private arbitral bodies are within the scope of § 1782(a). In *In re Roz Trading Ltd.*, the court held that a private arbitral panel of the International Arbitral Centre of the Austrian Federal Economic Chamber was a "tribunal" for purposes of § 1782(a). 469 F.Supp.2d at 1222. The court reasoned that "[w]here a body makes adjudicative decisions responsive to a complaint and reviewable in court, it falls within the widely accepted definition of 'tribunal,' the reasoning of *Intel*, and the scope of § 1782(a), regardless of whether the body is governmental or private." *Id.* at 1228. Similarly, in *In re: Application of Hallmark Capital Corp.*, 534 F.Supp.2d 951, 957 (D.Minn.2007), the court held that a private Israeli arbitral body was a "tribunal" for purposes of the statute.

Hitachi and BPI rely primarily on pre-*Intel* cases that concluded that private ar-

bitral bodies were not "tribunals" under § 1782(a). In *National Broadcasting Co., Inc. v. Bear Stearns & Co., Inc.*, 165 F.3d 184, 191 (2d Cir.1999), the Second Circuit held that a commercial arbitration in Mexico under the auspices of the ICC was not within the scope of § 1782(a). After finding the language of § 1782 to be ambiguous, the court analyzed the statute's legislative history and concluded that "Congress did not intend for [§ 1782] to apply to an arbitral body established by private parties." *Id.* Similarly, in *Republic of Kazakhstan v. Biedermann International*, 168 F.3d 880, 883 (5th Cir.1999), the Fifth Circuit held that § 1782 was "not intended to authorize resort to United States federal courts to assist discovery in private international arbitrations." In both *National Broadcasting Co.* and *Republic of Kazakhstan*, the courts expressed concern that if § 1782(a) were read to include private arbitral bodies, the statute might conflict with the Federal Arbitration Act ("FAA"), which provides much more restricted discovery options in the context of domestic arbitration actions. *See Nat'l Broadcasting Co.*, 165 F.3d at 187; *Republic of Kazakhstan*, 168 F.3d at 882–83.

I do not find the reasoning in *National Broadcasting Co.* and *Republic of Kazakhstan* to be persuasive, particularly in light of the subsequent Supreme Court decision in *Intel*. As described above, the Court in *Intel* emphasized Congress's intent to expand the applicable scope of § 1782(a). The Court noted Congress's use of the broad term "tribunal," and it favorably quoted Professor Smit's defini-

---

4. As Justice Ginsburg, the author for the Supreme Court of *Intel*, observed earlier when sitting as a Court of Appeals judge, Professor Smit is "the dominant drafter of, and commentator on, the 1964 revision of 28 U.S.C. § 1782." *In re Letter of Request from Crown Prosecution Service*, 870 F.2d 686, 689 (D.C.Cir.1989) (R.B. Ginsburg, J.); *see also Euromepa, S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1099 (2d Cir.1995) (describing Professor Smit as a "chief architect" of § 1782).

tion of the term, which expressly included "arbitral tribunals." *Intel,* 542 U.S. at 258, 124 S.Ct. 2466. There is no textual basis upon which to draw a distinction between public and private arbitral tribunals, and the Supreme Court in *Intel* repeatedly refused to place "categorical limitations" on the availability of § 1782(a). *Id.* at 265, 124 S.Ct. 2466.[5] Further, the Court in *Intel* expressly rejected the argument that an applicant under § 1782(a) "must show that United States law would allow discovery in domestic litigation analogous to the foreign proceeding," thus obviating the need for concern about inconsistencies between § 1782 and the FAA. *Id.* at 263, 124 S.Ct. 2466. The *Intel* Court explained that § 1782 is primarily intended for the assistance of foreign tribunals, and it does not require United States courts to engage in any comparative analysis vis-a-vis domestic proceedings. *Id.*

For these reasons, I conclude that the ICC is a "tribunal" within the meaning of § 1782(a), and that all of the required elements of the statute have been met. This is not, however, the end of the inquiry. Even if an applicant meets the statutory requirements of § 1782(a), the court may still deny the request for discovery on discretionary grounds.

### C. Discretionary analysis under § 1782(a)

 Section 1782 does not require a district court "to grant a § 1782(a) discovery application simply because it has the authority to do so." *Id.* at 264, 124 S.Ct. 2466. The Supreme Court in *Intel* identi-fied two general factors that district courts should consider when determining whether an application brought under § 1782(a) should be granted: (1) whether the person from whom discovery is sought is a participant in the foreign proceedings, and (2) the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign tribunal to judicial assistance. *Id.* at 264–65, 124 S.Ct. 2466. A district court may also consider "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States." *Id.* at 265, 124 S.Ct. 2466.[6]

### 1. Participant in the foreign proceedings

The Supreme Court has explained that "when the person from whom discovery is sought is a participant in the foreign proceeding ..., the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad." *Id.* at 264, 124 S.Ct. 2466. This is because "[a] foreign tribunal has jurisdiction over those appearing before it, and can itself order them to produce evidence." *Id.* It is apparent BPI will not be a participant in the potential arbitration proceedings before the ICC.

Hitachi and BPI have argued that the ICC would nonetheless have jurisdiction to compel discovery of the materials sought by BBAG because Hitachi has access to

---

**5.** Among the categorical limitations expressly rejected by the *Intel* Court were a requirement that the proceedings before the foreign tribunal be "pending" or "imminent," 542 U.S. at 259, 124 S.Ct. 2466, and a requirement that the discovery materials sought must be discoverable in the foreign jurisdiction. *Id.* at 260, 124 S.Ct. 2466.

**6.** The district court may also deny or narrow a discovery request that is unduly intrusive or burdensome. *Intel,* 542 U.S. at 265, 124 S.Ct. 2466. However, I need not reach this dimension of *Intel* discretionary analysis in this case.

the very same materials and would be a participant in the arbitration. While there is no "exhaustion" requirement for seeking discovery under § 1782, the district court may, in its discretion, properly consider a party's failure first to attempt discovery measures in the foreign jurisdiction. *See In re Application of Digitechnic,* No. C07–414–JCC, 2007 WL 1367697, *4 (W.D.Wash. May 8, 2007) ("[T]he Court is unconvinced that [the applicant] cannot obtain any of the discovery it seeks here via French discovery procedures.").[7] This argument, however, presupposes that Hitachi has full access to a set of responsive materials substantially identical to what BPI could produce. Even for materials relating to communications between Hitachi and BPI, this premise may be unsound, because BPI may have some pertinent documents and commentary regarding communications that Hitachi does not. To the extent that any such materials would be helpful to the ICC for the potential arbitration proceedings, discovery under § 1782(a) may be appropriate.

### 2. Receptivity of the ICC

■ The court may also take into account "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign [tribunal] to U.S. federal-court judicial assistance." *Intel,* 542 U.S. at 264, 124 S.Ct. 2466. The receptivity of the foreign tribunal is particularly important in light of the purposes of § 1782(a). As the Supreme Court has explained, the primary purpose of the statute is "to assist foreign tribunals in obtaining relevant information that the tribunals may find useful but, for reasons having no bearing on international comity,

they cannot obtain under their own laws." *Id.* at 262, 124 S.Ct. 2466. In a situation where the foreign tribunal restricts discovery, granting the application could undermine the statute's objective. *See, e.g., In re Application of Microsoft Corp.,* No. 06–10061–MLW, 2006 WL 1344091, *4 (D.Mass. April 19, 2006). Moreover, if there is reliable evidence that the foreign tribunal would not make any use of the requested material, it may be irresponsible for a district court to order discovery, especially where it involves substantial costs to the parties involved. In the present case, however, neither party has presented "authoritative proof" regarding the receptivity of the ICC to the discovery materials requested. *Cf. Euromepa, S.A. v. R. Esmerian, Inc.,* 51 F.3d 1095, 1099–100 (2d Cir.1995) (holding that a district court should not determine receptivity under § 1782(a) simply by evaluating affidavits from international legal experts or engaging in its own inevitably superficial analysis of foreign law and procedures).

### 3. Conclusion

Under the circumstances of this case, I find that I should exercise my discretion by denying BBAG's discovery requests until if and when the ICC provides some affirmative indication of its receptivity to the requested materials. It is true that § 1782(a) authorizes me to permit discovery even in the face of uncertainty about the ICC's position, because the ICC could in any event later determine on its own which materials, if any, it would consider in connection with the arbitration proceeding. *See Intel,* 542 U.S. at 262, 124 S.Ct. 2466 ("Moreover, the foreign tribunal can

---

**7.** The application in *In re Application of Digitechnic,* No. C07–414–JCC, 2007 WL 1367697 (W.D.Wash. May 8, 2007), sought to compel discovery directly from another participant in the foreign proceeding under § 1782(a). It is

therefore not fully analogous to the present case, where BBAG seeks materials from BPI, who would not be a party to the ICC arbitration.

242

place conditions on its acceptance of the information to maintain whatever measure of parity it concludes is appropriate."); *see also Euromepa,* 51 F.3d at 1101 (encouraging district courts to err on the side of granting discovery because "a foreign tribunal's corrective response to a well-intentioned but unwelcome grant of discovery could ... provide helpful instruction to American courts in handling future cases."). Nor is it necessary for me to wait until an arbitration action is "pending" or "imminent" before granting a § 1782(a) application. *See Intel,* 542 U.S. at 259, 124 S.Ct. 2466 ("[W]e hold that § 1782(a) requires only that a dispositive ruling ... be within reasonable contemplation.").[8] As the Supreme Court explained in *Intel,* however, a district court is not required to permit discovery under § 1782(a) simply because it has authority to do so. *Id.* at 262, 124 S.Ct. 2466.

I find it material that the parties to this dispute have recently engaged in lengthy and highly contentious litigation with one another. Hitachi and BPI have accused BBAG of using this discovery request either as a means to circumvent the evidentiary restrictions of the ICC arbitration system, or effectively to open a new front to obtain materials from BPI they were unable to obtain in the prior litigation that they concluded before seeking court orders requiring production. *See id.* at 265, 124 S.Ct. 2466 ("[A] district court could consider whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States.").

The apparent bad blood among these parties, coupled with the fact that BBAG has not taken any formal steps toward initiating arbitration in the ICC after allegedly discovering Hitachi's misconduct almost two years ago, are grounds for exercising restraint before ordering discovery in this setting.

If arbitration proceedings advance to the stage where the ICC indicates its receptivity to some or all of BBAG's requested discovery materials, I stand ready and willing to reconsider this ruling. If and when that occurs, I will address any concerns about the extent to which the request is unduly burdensome, unduly invasive, or involves privileged material. For now, however, I exercise this court's discretion under § 1782(a) to deny BBAG's motion to compel without prejudice.

### III. CONCLUSION

For the reasons set forth more fully above, I DENY BBAG's motion to compel without prejudice.

---

8. It is not altogether clear whether the ICC arbitration contemplated in this case qualifies for even this low threshold. In *Intel,* the Supreme Court held that the proceedings were "within reasonable contemplation" where the applicant had filed a formal antitrust complaint with the Directorate–General of Competition of the European Commission and an investigation was ongoing. *Intel,* 542 U.S. at 247–50, 124 S.Ct. 2466. In this case, by contrast, BBAG has not taken *any* formal steps to initiate arbitration proceedings before the ICC. Nevertheless, for the purposes of this motion, I will assume that the potential ICC arbitration is, indeed, "within reasonable contemplation."