**In re Application of Prabhat K. DUBEY.**

Case No. SACV 13–677 JVS (SHx).

United States District Court, C.D. California.

June 7, 2013.

Neil D. Greenstein, Techmark, San Diego, CA, for Petitioner.

Daniel Johnson, Jr., Dion Michael Bregman, Michael J. Lyons, Morgan Lewis and Bockius, Palo Alto, CA, Mario Moore, Morgan Lewis and Bockius LLP, Irvine, CA, for Respondent.

## ORDER RE: APPLICATION FOR ORDER

JAMES V. SELNA, District Judge.

Before the Court is Prabhat K. Dubey's ("Petitioner's") Application for an Order Directing MTI Laboratory ("MTI") to Produce Documents For Use in an International Tribunal pursuant to 28 U.S.C. § 1782. (Appl., Docket No. 1.) MTI opposes the application. (Opp'n, Docket No. 13.) Petitioner filed a reply. (Reply, Docket No. 23.) For the following reasons, the Court DENIES the Application for Order.

### I. *Background*

On November 26, 2012, Microelectronics Technology, Inc., a Taiwan Corporation, and its El Segundo, California-based subsidiary MTI, filed an arbitration against Petitioner and several other Respondents. (Appl., Greenstein Decl. Ex. 2 ("Demand for Arbitration") ¶ 13, Docket No. 7.) The arbitration involves a sale of assets to MTI, which closed on June 1, 2009, pursu-

ant to an Asset Purchase Agreement ("Agreement"). (*Id.* ¶ 19.) MTI was sued by Powerwave Technologies, Inc. for patent infringement in federal court. (*Id.* ¶ 23.) MTI seeks indemnification from Petitioner and Respondents for the costs of defending the lawsuit in accordance with certain provisions in the Agreement. (*Id.* ¶¶ 20–22.) The Agreement provides that any dispute arising out of the Agreement would be resolved by confidential binding arbitration under the American Arbitration Association ("AAA") International Dispute Resolution Procedures, to be held in Los Angeles, California. (*Id.* ¶ 13.)

On March 28, 2013, the AAA administrator provided the parties with a list of AAA arbitrators for purposes of selecting the arbitration panel. (Opp'n, Moore Decl. Ex. A, Docket No. 13–1.) On March 25, 2013, the parties submitted their selections for arbitrators. (*Id.* Ex. B.) On April 29, 2013, the arbitration administrator provided the parties the opportunity to challenge one of the arbitrators selected by Respondents by May 14, 2013. (*Id.* Ex. C.) As of this date, the arbitration panel has not yet been assembled to set the case schedule and hear the case. (Opp'n Br. 2.)

Petitioner now seeks various documents relevant to the arbitration dispute. (Appl. Br. 8–9.)

### II. *Discussion*

#### A. Statutory Requirements of 28 U.S.C. § 1782

Petitioner submits this application pursuant to 28 U.S.C. § 1782. The federal statute provides, in relevant part, that "[t]he district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal." 28 U.S.C. § 1782. The primary purpose of § 1782 is

to provide federal-court judicial assistance in gathering evidence for use in a proceeding in a foreign or international tribunal. *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 247, 124 S.Ct. 2466, 159 L.Ed.2d 355 (2004). A district court may order a person to produce discovery if three requirements are satisfied: (1) the application is made by a foreign or international tribunal or "any interested person"; (2) the discovery is "for use in a proceeding in a foreign or international tribunal"; and (3) the person or entity from whom the discovery is sought is a resident of or found in the district in which the application is filed. *In re Bayer*, 146 F.3d 188, 193 (3d Cir.1998).

Only the second requirement is at issue here.[1] Petitioner contends that the arbitration here is a "international tribunal" within the meaning of § 1782 because the arbitration is pending under the International Dispute Resolution Procedures of the AAA, and those rules allow the arbitral panel to hear and weigh evidence while reaching its final decision. (Appl. Br. 13.) MTI argues that the arbitration proceeding does not meet the definition under § 1782. (Opp'n Br. 3.)

The crux of the dispute is whether a "proceeding in a foreign or international tribunal" applies to private arbitrations established by contract, such as the arbitration at issue here. The case law is unclear on this.[2] MTI points out that both the Second and Fifth Circuits have directly held that § 1782 does not apply to private contractual arbitrations. In *National Broadcasting Co. v. Bear Sterns & Co.*, 165 F.3d 184, 188–91 (2d Cir.1999), the Second Circuit explored the legislative history behind § 1782 to determine whether private arbitral panels are included in the term "foreign or international tribunals." It concluded that "there is no indication that Congress intended for the [statute] to reach private international tribunals," and this "silence with respect to private tribunals is especially telling because ... a significant congressional expansion of American judicial assistance to international arbitral panels created exclusively by private parties would not have been lightly undertaken by Congress without at least a mention of this legislative intention." *Id.* at 190 (citing H.R.Rep. No. 88–1052, at 9 (1963); S.Rep. No. 88–1580, at 3788–89 (1964)). The court explained that, while Congress expanded the scope of the statute in 1964 with the language "foreign or international tribunal," it did not contemplate that this extended beyond governmental adjudicatory bodies. *Id.* at 189. Moreover, the Second Circuit reasoned that policy considerations reinforced its conclusion because "broad discovery in proceedings before 'foreign or international' private arbitrators would stand in stark contrast to the limited evidence gathering provided in [Section 7 of the Federal Arbitration Act] for proceedings before domestic arbitration panels." *Id.* at 191. In *Republic of Kazakhstan v. Biedermann Int'l*, 168 F.3d 880, 883 (5th Cir.1999), the Fifth Circuit affirmed this conclusion, noting that "[e]mpowering arbitrators, or worse, the parties, in private international disputes to seek ancillary discovery through the federal courts does not benefit the arbitration process. Arbitration is intended as a speedy, economical, and effective means of dispute resolution."

---

1. MTI concedes that MTI resides in this district and Petitioner is a party to the arbitration, thus meeting the first and third requirements. (*See* Opp'n Br. 3.)

2. Petitioner argues that the plain language of the statute is clear because arbitration panels are included within the ordinary meaning of "tribunal," thus ending the inquiry. (Reply Br. 6–7.) However, it is clear from the cases discussed infra that the meaning of "tribunal" is ambiguous within the context of § 1782.

Subsequent to these two decisions, in 2004, the Supreme Court in *Intel* held that the Directorate–General for Competition of the European Commission, the "European Union's primary antitrust law enforcer," was a tribunal within the meaning of § 1782. 542 U.S. at 250, 257–58, 124 S.Ct. 2466. *Intel* examined the function and procedures of the European Commission, finding that its role as a first-instance decisionmaker, its authority to determine liability and impose penalties, its ability make a final disposition, and the judicial reviewability of the final decisions were key factors in holding that it had "no warrant to exclude the European Commission ... from § 1782(a)'s ambit." *Id.* at 258, 124 S.Ct. 2466; *see also id.* at 255 n. 9, 124 S.Ct. 2466. The Supreme Court also clarified certain areas of § 1782, holding that (1) there is no "foreign discoverability requirement" that must be satisfied before obtaining discovery pursuant to § 1782; and (2) there is no requirement that the foreign proceeding be "pending or imminent" as long as the proceeding is "within reasonable contemplation." *Id.* at 253–54, 259, 124 S.Ct. 2466.

Since *Intel*, courts have split as to whether § 1782 applies to purely private arbitrations. Petitioner cites several post-*Intel* district court decisions to show that an international arbitral body qualifies as a "foreign or international tribunal" within the meaning of § 1782 (Appl. Br. 12–13). *See In re Babcock Borsig AG*, 583 F.Supp.2d 233, 240 (D.Mass.2008); *In re Hallmark Capital Corp.*, 534 F.Supp.2d 951, 952 (D.Minn.2007); *In re Roz Trading Ltd.*, 469 F.Supp.2d 1221, 1222 (N.D.Ga. 2006). Those holdings are based on a broad interpretation of the *Intel* case and a citation within *Intel* to Smit, *International Litigation* 1026–27 & nn. 71, 73, quoting "[t]he term 'tribunal' ... includes investigating magistrates, administrative

and arbitral tribunals, and quasi-judicial agencies, as well as conventional, civil, commercial, criminal, and administrative courts." *See Intel*, 542 U.S. at 258, 124 S.Ct. 2466. Petitioner asks the Court to consider these "more complete reasoned" authorities. (Reply Br. 5.)

On the other hand, MTI argues that the Court should follow post-*Intel* district courts that have rejected applying § 1782 to private commercial arbitrations (Opp'n Br. 7). *See In re Arbitration in London, England*, 626 F.Supp.2d 882, 886 (N.D.Ill. 2009): *In re Operadora DB Mex., S.A. de C.V.*, 2009 WL 2423138, at *12 (M.D.Fla. Aug. 4, 2009); *La Comision Ejecutiva Hidroelecctrica Del Rio v. El Paso Corp.*, 617 F.Supp.2d 481, 485 (S.D.Tex.2008). The Ninth Circuit has not addressed the issue, and there appears to be a division among circuits post-*Intel*. *Compare El Paso Corp. v. La Comision Ejecutiva Hidroeléctrica Del Rio Lempa*, 341 Fed.Appx. 31, 34 (5th Cir.2009) (affirming its holding in *Biedermann* and finding that none of the concerns regarding the application of § 1782 to private international arbitrations were at issue or considered in *Intel*), with *Consorcio Ecuatoriano de Telecomunicaciones S.A. v. JAS Forwarding (USA), Inc.*, 685 F.3d 987, 996–97 (11th Cir.2012) (although *Intel* did not specifically decide whether a private arbitral tribunal falls under the statute, pending Ecuador arbitration fell within *Intel's* broad functional construction of "tribunal").

▊ After reviewing *Intel* and the relevant cases, the Court finds that private arbitrations do not fall within the meaning of "foreign or international tribunal" under § 1782. First, the Court follows the district court decisions finding that *Intel* did not intend to expand the meaning of "foreign or international tribunal" to include private arbitrations. The *Intel* court never addressed this issue and instead focused its discussion on whether a

"tribunal" includes "quasi-judicial agencies" such as the European Commission. 542 U.S. at 257, 124 S.Ct. 2466; *see also Arbitration in London,* 626 F.Supp.2d at 885 ("[A]lthough the *Intel* Court acknowledged the ways in which Congress has progressively broadened the scope [of] § 1782, it stopped short of declaring that any foreign body exercising adjudicatory power falls within the purview of the statute."); *Operadora,* 2009 WL 2423138, at *11 ("This Court is confident that the Supreme Court would not have expanded § 1782 to permit discovery assistance in private arbitral proceedings and reversed *NBC* and *Biedermann*—without even acknowledging their existence—in a parenthetical quotation supporting an unrelated proposition."); *La Comision,* 617 F.Supp.2d at 485 ("[T]he Supreme Court has not addressed the application of § 1782 to arbitral tribunals, not even in *dicta.*"). Moreover, the Court is convinced that a "reasoned distinction" can be made between purely private arbitrations established by private contract and state-sponsored arbitral bodies, and the *Intel* court's reasoning is more appropriate in the context of state or governmental adjudicatory bodies. *See Arbitration in London,* 626 F.Supp.2d at 885; *Operadora,* 2009 WL 2423138, at *11 ("Because the [International Chamber of Commerce] Panel's authority derives from the parties' agreement, its purpose is fundamentally different from that of a governmental or state-sponsored proceeding."); *cf. In re Oxus Gold PLC,* 2007 WL 1037387, at *5 (D.N.J. Apr.2, 2007) (an arbitration administered under the Arbitration Rules of the United Nations Commission on International Trade Law ("UNCITRAL") pursuant to a Bilateral Investment Treaty was an "international or foreign tribunal" because it was authorized by sovereign government entities). For these reasons, the Court finds the arguments for a broad interpretation of *Intel,* as laid out in *Babcock, Hallmark,* and *Roz Trading,* unconvincing.[3] *See Operadora,* 2009 WL

**3.** Some courts also conduct a "functional" analysis to determine whether the arbitration contains the characteristics of a tribunal emphasized by the *Intel* court in dictum. These characteristics include "whether the arbitral panel acts as a first-instance adjudicative decisionmaker, whether it permits the gathering and submission of evidence, whether it has the authority to determine liability and impose penalties, and whether its decision is subject to judicial review." *Consorcio Ecuatoriano,* 685 F.3d at 995 (citing *Intel,* 542 U.S. at 255 & n. 9, 124 S.Ct. 2466); *see, e.g., Roz Trading,* 469 F.Supp.2d at 1225 (because the arbitration proceeding was a "firstinstance decisionmaker" that issues decisions "both responsive to the complaint and reviewable in court," it must necessarily be considered a "tribunal"); *Operadora,* 2009 WL 2423138, at *9–10 (while some *Intel* attributes applied—such as the arbitrator's ability to gather evidence, apply the law, and enter a binding decision—the arbitration did not function as a tribunal because the final decision was not judicially reviewable and the *Intel* court did not consider the source of the arbitration panel's authority, which here, was the product of a contractual agreement); *Arbitration in London,* 626 F.Supp.2d at 886 (the arbitral tribunal did not fall within the *Intel* definition because "private arbitrations are generally considered alternatives to, rather than precursors to, formal litigation" and "the very narrow circumstances in which the Board's decisions may be subject to review does not allow for judicial review of the merits of the parties' dispute"); *In re Winning (HK) Shipping Co. Ltd.,* 2010 WL 1796579, at *8–10 (S.D.Fla. Apr. 30, 2010) (conducting functional analysis and concluding that arbitration in London was a "foreign tribunal" because the arbitration award is reviewable by English courts); *Ukrnafta v. Carpatsky Petroleum Corp.,* 2009 WL 2877156, at *4 (D.Conn. Aug. 27, 2009) (because the Stockholm arbitration governed by UNCITRAL is subject to judicial review, it is a "first-instance decision maker" falling under the purview of § 1782); *In re Finserve Grp.,* 2011 WL 5024264, at *3 (D.S.C. Oct. 20, 2011) (because London Court of International Arbitration Rules waives judicial review, "the Court questions whether [it] would be consid-

2423138, at *11 (rejecting the reasoning in *Babcock, Hallmark,* and *Roz Trading,* and finding that those district courts relied too heavily on the Supreme Court's inclusion of the phrase "arbitral panel" in a parenthetical quotation and failed to consider whether proceedings are created by private contract or domestic or international law).

Second, the Court instead finds the reasoning in *National Broadcasting* and *Biedermann* directly on point and persuasive. Both the Second Circuit and Fifth Circuit "tackled the issue squarely," considered both legislative history and policy reasons, and resolved the ambiguity against including private arbitrations in § 1782. *La Comision,* 617 F.Supp.2d at 486; *see also Operadora,* 2009 WL 2423138, at *11 ("*NBC* and *Biedermann* examined [ ] fundamental differences in detail, finding that proceedings that are the product of contractual agreements to resolve disputes are functionally different than, and often opposed to, state-sponsored proceedings."). The Court is convinced by the legislative history and policy arguments. Construing § 1782 to apply to private contractual arbitrations would defeat the timeliness and cost-effectiveness of arbitration, and would place a heavy burden on the federal courts to determine discovery requests. Accordingly, because the proceeding here is a private arbitration contractually agreed upon by the parties, it does not fall within the meaning of § 1782.

The parties also dispute whether the arbitration here is "international" for purposes of § 1782. MTI argues that § 1782 does not apply to arbitrations taking place in the United States, and the arbitration here largely consists of U.S. parties and will be conducted under the AAA. (Opp'n Br. 1, 3–4, 9.) Petitioner contends that the arbitration is international in nature and conducted pursuant to the International Dispute Resolution Procedures, and thus falls under § 1782's "international" prong. (Reply Br. 2–3.) Because the Court finds that a private arbitration is not considered a "tribunal" under § 1782, it is not necessary to address whether the private arbitration here is "international" within the meaning of § 1782. However, it notes that all of the cases discussed—even those finding against including private arbitration under § 1782—address arbitration held in a foreign country. *See Arbitration in London,* 626 F.Supp.2d at 883 (London arbitration); *Operadora,* 2009 WL 2423138, at *1 (Mexico arbitration conducted under the International Chamber of Commerce ("ICC") Court of Arbitration); *La Comision,* 617 F.Supp.2d at 482 (foreign arbitration pending in Switzerland); *Babcock,* 583 F.Supp.2d at 236 (potential German arbitration before an ICC panel); *Hallmark,* 534 F.Supp.2d at 952 (Israeli arbitration proceeding); *Roz Trading,* 469 F.Supp.2d at 1222 (foreign arbitration before International Arbitral Centre in Austria); *Oxus Gold,* 2007 WL 1037387, at *1

---

ered a 'foreign tribunal' under the statute"). Petitioner briefly addresses the issue, arguing that the International Dispute Resolution Procedures allow the arbitral panel to hear and weigh evidence as a "first-instance decision-maker" that conducts proceedings leading to a binding, dispositive ruling. (Appl. Br. 13.) However, the parties do not address whether or to what extent the arbitration award here is reviewable by courts—a factor weighed heavily by the decisions cited above. The International Dispute Resolution Procedures

merely state that the award "shall be final and binding on the parties." (Greenstein Decl. Ex. 9 ("International Dispute Resolution Procedures") art. 27, ¶ 1.) As such, the Court does not consider whether the arbitration here falls within the "functional" definition of a tribunal suggested by *Intel.* Nonetheless, the Court is not convinced that *Intel* authorizes § 1782 to apply to *any* type of proceeding that falls within its "functional" definition of a tribunal, as suggested by some post-*Intel* decisions.

(arbitration between United Kingdom and Kyrgyz Republic nationals pursuant to UNCITRAL); *Winning (HK) Shipping*, 2010 WL 1796579, at *1 (London maritime arbitration); *Finserve Grp.*, 2011 WL 5024264, at *1 (London Court of International Arbitration); *Consorcio Ecuatoriano*, 685 F.3d at 989 (foreign arbitration in Ecuador); *Nat'l Broad.*, 165 F.3d at 185 (arbitration proceeding in Mexico); *Biedermann*, 168 F.3d at 881 (proceeding before Arbitration Institute of the Stockholm Chamber of Commerce); *Ukrnafta*, 2009 WL 2877156, at *1 (same). Because all of these proceedings were held in foreign countries, the courts did not consider the meaning of the term "international" under § 1782. Nor have either of the parties provided case law in which a petitioner applied for § 1782 in relation to an arbitration proceeding held in the United States. Regardless, the Court makes no finding on that issue at this time.

In sum, Petitioner has not shown that his application meets the statutory requirements of § 1782.

## B. Discretionary Factors

■ Even if Petitioner had met the statutory requirements, the Court would exercise its discretion and deny his § 1782 discovery application. In *Intel*, the Supreme Court laid out discretionary factors for considering whether a district court should exercise its discretion and grant a § 1782 application. 542 U.S. at 264, 124 S.Ct. 2466. These factors include (1) whether the person from whom discovery is sought is a participant in the foreign proceeding so that the foreign tribunal can order the participant to produce evidence; (2) the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or court or agency abroad to U.S.-federal court judicial assistance; and (3) unduly intrusive or burdensome requests. *Id.* at 264–65, 124 S.Ct. 2466.

■ Under the circumstances of this case, it is unclear what the arbitrator's position is regarding the parties' need for documents because the panel has not been fully assembled.[4] In light of this, the

4. Petitioner may not require the Court's assistance as he might be able to obtain the requested documents pursuant to the arbitration rules. The International Dispute Resolution Procedures state that "[t]he Tribunal may order a party to deliver to the tribunal and to other parties a summary of the documents and other evidence which that party intends to present in support of its claim, counterclaim or defense." (International Dispute Resolution Procedures art. 19, ¶ 2.) Furthermore, "[a]t anytime during the proceedings, the tribunal may order parties to produce other documents, exhibits, or other evidence it deems necessary or appropriate." (*Id.* art. 19, ¶ 3.)

Petitioner argues that the fact that the panel has not yet been assembled and has not had a chance to rule on his discovery requests is not a factor to be considered, as set forth in *Intel*. (*See* Appl. Br. 14 n. 4; Reply Br. 13.) However, he is incorrect. *Intel* merely explained that § 1782 does not bar a district court from ordering production of documents when the

documents would not be discoverable in the foreign jurisdiction, *i.e.*, § 1782 does not impose a "foreign-discoverability" requirement. 542 U.S. at 259–63, 124 S.Ct. 2466. This means that Petitioner is not *required* to show that the documents are discoverable in the underlying arbitration. But *Intel* did not hold that the Court is barred from *considering* whether the arbitral panel could order production of the documents under its own procedures. In fact, its rejection of the foreign-discoverability requirement suggests the opposite. *See id.* at 262, 124 S.Ct. 2466 (explaining that the primary objective of § 1782 is "to assist foreign tribunals in obtaining relevant information that the tribunals may find useful but, for reasons having no bearing on international comity, they cannot obtain under their own laws"). That is, if § 1782 were the only means of relief for Petitioner, this would weigh in favor of the Court exercising its discretion to grant the application. But there is no indication that this is the case.

Court would decline to exercise its discretion. Moreover, there is currently no evidence about the arbitral panel's receptivity to the requested materials. Although the Court may permit discovery even in the face of uncertainty about the panel's position, *see Intel,* 542 U.S. at 262, 124 S.Ct. 2466, "the receptivity of the foreign tribunal is particularly important in light of the purposes of § 1782(a)," *Babcock,* 583 F.Supp.2d at 241. Accordingly, even if the statutory requirements were met, the Court would not exercise its authority to grant Petitioner's application.

### III. *Conclusion*

For the foregoing reasons, the Court DENIES Petitioner's Application for Order.

IT IS SO ORDERED.