**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 18-2454**

SERVOTRONICS, INC.,

Movant - Appellant,

v.

THE BOEING COMPANY; ROLLS-ROYCE PLC,

Intervenors - Appellees.

Appeal from the United States District Court for the District of South Carolina, at Charleston. David C. Norton, District Judge. (2:18-mc-00364-DCN)

Argued: December 10, 2019                    Decided: March 30, 2020

Before GREGORY, Chief Judge, and NIEMEYER and HARRIS, Circuit Judges.

Reversed and remanded by published opinion. Judge Niemeyer wrote the opinion, in which Chief Judge Gregory and Judge Harris joined.

**ARGUED:** Stephen Richard Stegich, III, CONDON & FORSYTH, LLP, New York, New York, for Appellant. Michael Sylvain Paisner, BOEING COMPANY, Renton, Washington, for Appellees. **ON BRIEF:** Michael B.T. Wilkes, Charles Daniel Atkinson, WILKES LAW FIRM, P.A., Spartanburg, South Carolina, for Appellant. Henry L. Parr, Jr, WYCHE, P.A., Greenville, South Carolina; Larry S. Kaplan, Matthew J. Obiala, KMA ZUCKERT LLC, Chicago, Illinois, for Appellee Rolls-Royce PLC. Scott P. Martin, Seattle, Washington, Bates McIntyre Larson, PERKINS COIE LLP, Chicago, Illinois, for Appellee The Boeing Company.

NIEMEYER, Circuit Judge:

The question in this case is whether a party to a private arbitration in the United Kingdom can, under 28 U.S.C. § 1782, obtain testimony from residents of South Carolina for use in the arbitration. Section 1782(a) provides that a U.S. district court may, on the request of an interested party, provide assistance in connection with a proceeding before "a foreign or international tribunal" by ordering a person in its district "to give his testimony or statement or to produce a document or other thing for use in [the] proceeding." The parties disagree as to whether the UK arbitration panel is a "foreign or international tribunal," as that phrase is used in § 1782(a).

Servotronics, Inc., supplied a valve to Rolls-Royce PLC that Rolls-Royce installed in an engine that it manufactured and supplied to The Boeing Company for installation on a new Boeing 787 Dreamliner aircraft. In January 2016, while testing the engine at Boeing's plant in South Carolina, the engine caught fire, causing significant damage to Boeing's aircraft. After Rolls-Royce settled Boeing's claim for damages, it sought indemnification in the amount of $12.8 million from Servotronics, contending that a malfunction of Servotronics' valve caused the fire. On Servotronics' rejection of the claim, Rolls-Royce commenced an arbitration proceeding in the United Kingdom, as required by the standing contract between the parties.

To obtain evidence for use in the UK arbitration, Servotronics filed an application in the district court under § 1782 to obtain testimony from three Boeing employees residing in South Carolina. The district court denied Servotronics' application, concluding that the private arbitration between Servotronics and Rolls-Royce was not before a "foreign

2

tribunal" as that term is used in § 1782 and therefore that the court lacked authority under § 1782 to provide the assistance requested.

Because we conclude that the arbitral panel in the United Kingdom is indeed a foreign tribunal for purposes of § 1782, we reverse and remand for further proceedings on Servotronics' application.

I

The underlying facts are not in dispute for purposes of this appeal. In May 2015, Servotronics supplied a "metering valve servo valve" to Rolls-Royce for incorporation into a "hydro-mechanical unit" of an engine manufactured by Rolls-Royce and later installed on a new Boeing 787 Dreamliner aircraft. During predelivery flight and ground testing conducted by Boeing and Rolls-Royce personnel, an "unwanted wafer" of metal dislodged in the valve, adversely affecting the flow of fuel to the engine. While Boeing flight and ground crews were engaged in troubleshooting, a fire erupted in the engine, causing substantial damage to the aircraft. Rolls-Royce and Boeing settled Boeing's claim for damages in March 2017, and Rolls-Royce thereafter demanded indemnity of $12.8 million from Servotronics. Servotronics rejected Rolls-Royce's demand, asserting that "numerous improper, inadequate, and incorrect actions and failures to act of Boeing and Rolls-Royce personnel constitue[d] the legal cause of the damage." Servotronics also challenged the reasonableness of the settlement amount.

Under the terms of a "Long Term Agreement" between Servotronics and Rolls-Royce, when the parties are unable to resolve a dispute, "the dispute shall be referred

3

to and finally resolved by arbitration in Birmingham, England, under the rules of the Chartered Institute of Arbitrators, and these Rules are deemed to be incorporated by reference into [the Agreement]." Rolls-Royce accordingly initiated an arbitration in England in September 2018 to pursue its indemnification claim against Servotronics.

The rules of the Chartered Institute of Arbitrators — not unlike the rules of the American Arbitration Association — provide procedures for resolving disputes, and any award is considered "final and binding." Moreover, the arbitration process in the United Kingdom is governed by the UK Arbitration Act of 1996 — not unlike the Federal Arbitration Act ("FAA") in the United States. The UK Arbitration Act provides procedures for arbitrations and allows awards to be challenged and enforced in court.

In an effort to procure evidence to support its defense in the UK arbitration, Servotronics filed an ex parte application in the district court under 28 U.S.C. § 1782 to obtain a court order authorizing the service of subpoenas on three South Carolina residents, all current or former Boeing employees, to give testimony. Two of the employees participated in troubleshooting the aircraft engine that caught fire, and the third employee was the chairperson of the Boeing Incident Review Board that investigated the fire.

Relying on *National Broadcasting Company, Inc. v. Bear Stearns & Co., Inc.*, 165 F.3d 184 (2d Cir. 1999), and *Republic of Kazakhstan v. Biedermann International*, 168 F.3d 880 (5th Cir. 1999), both of which held that private arbitral bodies are not "tribunals" as used in § 1782(a), the district court denied Servotronics' application. From the district court's order dated November 6, 2018, Servotronics filed this appeal.

By order dated January 14, 2019, we granted the motions of Boeing and Rolls-Royce to intervene and participate in this appeal. And because Boeing and Rolls-Royce have filed a joint opposition to Servotronics' application in this appeal, we refer to them collectively hereafter as "Boeing."

II

Servotronics contends that the district court erred in ruling that the UK arbitral panel was not a "foreign tribunal" for purposes of § 1782 and therefore that it lacked authority to grant Servotronics' application to obtain testimony for use in the UK arbitration. Servotronics argues that the district court's reliance on *Bear Stearns* and *Biedermann* was inappropriate because the Supreme Court's subsequent decision in *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004), placed those two decisions in doubt. It claims that *Intel*, which held that a U.S. district court could entertain an application under § 1782 to assist proceedings before the Commission of the European Communities, interpreted the statute more broadly. Specifically, Servotronics argues that, under *Intel*'s flexible approach, "an arbitral tribunal is a 'tribunal' in both the legal and everyday sense of the word." Thus, Servotronics asserts that § 1782(a) does not require that a tribunal "be 'public,' 'state-sponsored,' or 'governmental,'" as Boeing argues and as *Bear Stearns* and *Biedermann* held.

Boeing contends, on the other hand, that the UK arbitration is a private proceeding arising from a private contract between the parties and that the district court did not err in relying on *Bear Stearns* and *Biedermann* to deny Servotronics' application under § 1782.

5

It maintains that *Intel* "did not overrule those prior decisions or undermine their reasoning" and that the term "foreign tribunal" refers to "an entity that exercise[s] government-conferred authority." Moreover, Boeing argues:

> Construing Section 1782(a) to exclude private arbitration . . . avoids a serious conflict with the FAA and the pro-arbitration policies embodied in that act. The discovery authorized by Section 1782(a) is much broader than the FAA contemplates. At a minimum, therefore, applying Section 1782(a) to "foreign or international" private arbitration would lead to the bizarre result that participants in such arbitrations could obtain far broader discovery in the United States than participants in comparable domestic arbitrations. Moreover, Section 1782(a) would displace the FAA in the considerable subset of arbitrations subject to both statutes, without any hint of congressional intent to accomplish that result. This outcome would undermine the strong federal policy favoring arbitration.

The district court did not address these broad concerns. Instead, it relied on *Bear Stearns* and *Biedermann* to deny Servotronics' application, concluding "that § 1782 does not apply to private arbitration because these arbitrations are not before a 'tribunal' as required by § 1782." Recognizing that district court decisions handed down after *Intel* have been deeply divided on the issue, the district court nonetheless continued to rely on *Bear Stearns* and *Biedermann*, explaining that *Intel* (1) did not mention *Bear Stearns* and *Biedermann* and (2) did not address whether private arbitral panels qualify as tribunals.

After the district court's ruling in this case, the Sixth Circuit issued a decision concluding that the language of § 1782(a) unambiguously "includes private commercial arbitral panels established pursuant to contract and having the authority to issue decisions that bind the parties," thus at the least creating a split of authority among the circuits. *In re Application to Obtain Discovery for Use in Foreign Proceedings*, 939 F.3d 710, 723 (6th Cir. 2019). Moreover, *In re Application to Obtain Discovery* is the only court of

6

appeals decision to have addressed the issue since *Intel*. We have never addressed the issue, either before or after *Intel*.

Section 1782, titled "Assistance to foreign and international tribunals and to litigants before such tribunals," provides in relevant part:

> The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusation. The order may be made pursuant to a letter rogatory issued, or request made, by a foreign or international tribunal or upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court. By virtue of his appointment, the person appointed has power to administer any necessary oath and take the testimony or statement. The order may prescribe the practice and procedure, which may be in whole or part the practice and procedure of the foreign country or the international tribunal, for taking the testimony or statement or producing the document or other thing. To the extent that the order does not prescribe otherwise, the testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure.
>
> A person may not be compelled to give his testimony or statement or to produce a document or other thing in violation of any legally applicable privilege.

28 U.S.C. § 1782(a). This statute reflects a long-term — over 150-year — policy of Congress to facilitate cooperation with foreign countries by "provid[ing] federal-court assistance in gathering evidence for use in foreign tribunals." *Intel*, 542 U.S. at 247. Some 50 years ago, with the growth of international commerce, Congress sought to improve the assistance that it had previously afforded. *Id.* at 248. It established the Commission on International Rules of Judicial Procedure with instructions to recommend changes designed to improve international cooperation. The Rules Commission did indeed recommend

7

changes to § 1782, which Congress adopted in 1964. With the changes, Congress deleted from the former version of the statute the words "in any *judicial* proceeding pending *in any court* in a foreign country" and replaced them with the phrase "in a proceeding in a foreign or international *tribunal*." *Id.* at 248–49 (emphasis added). Congress understood that its change would authorize U.S. assistance not only in connection with court proceedings but also "in connection with administrative and quasi-judicial proceedings abroad." *Intel*, 542 U.S. at 258 (cleaned up) (quoting S. Rep. No. 88-1580, at 7–8); *see also* Hans Smit, *International Litigation Under the United States Code*, 65 Colum. L. Rev. 1015, 1026 n.71, 1027 n.73 (1965) (written by a reporter to the Rules Commission and indicating that the term "tribunal" was meant to include "investigating magistrates, administrative and *arbitral tribunals*, and quasi-judicial agencies, as well as conventional civil, commercial, criminal, and administrative courts" (emphasis added) (cited approvingly in *Intel*)).

The current version of the statute, as amended in 1964, thus manifests Congress' policy to increase international cooperation by providing U.S. assistance in resolving disputes before not only foreign *courts* but before all foreign and international *tribunals*. This policy was intended to contribute to the orderly resolution of disputes both in the United States and abroad, elevating the importance of the rule of law and encouraging a spirit of comity between foreign countries and the United States.

Notwithstanding Congress' articulated purpose for increasing such foreign assistance, Boeing maintains that "tribunal," as used in § 1782(a), still refers only to "an entity that exercise[s] government-conferred authority." And from this premise, it reasons that because arbitration is a private proceeding "deriv[ing] its authority not from the

8

government, but from the parties' agreement," an arbitral panel is not a "tribunal." We conclude, however, that Boeing's argument represents too narrow an understanding of arbitration, whether it is conducted in the United Kingdom or the United States.

In the United States, for instance, with the enactment of the FAA, Congress "elevate[d] the arbitration of claims *as a favored alternative to litigation* when the parties agree in writing to arbitration." *McCormick v. America Online, Inc.*, 909 F.3d 677, 680 (4th Cir. 2018) (emphasis added) (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)). Moreover, not only did Congress thus endorse the arbitration alternative, it also undertook to regulate the process and confer supervisory authority on U.S. district courts.

At its most expansive level, the FAA declares that arbitration contracts are "valid, irrevocable, and enforceable," thus furthering its basic purpose of eliminating earlier judicial resistance to arbitration agreements. 9 U.S.C. § 2. The Act then provides particular procedural mechanisms for conducting arbitrations, as well as for court supervision and enforcement of arbitral awards. It directs courts to compel arbitration when a contract so provides, *id.* § 4, and to stay court proceedings in favor of arbitration, *id.* § 3. It authorizes arbitrators to issue summons for witnesses and documents, and it authorizes district courts to enforce the summons as subpoenas. *Id.* § 7; *see also* Fed. R. Civ. P. 45. It subjects arbitration awards to judicial review, albeit on a limited basis. 9 U.S.C. §§ 9–11. And it authorizes courts to enforce arbitration awards as judgments of the court. *Id.* §§ 9, 13. In short, arbitration in the United States is a congressionally endorsed and regulated process that is judicially supervised. And it was developed as a favored alternative to the judicial

9

process for the resolution of disputes. Thus, contrary to Boeing's general assertion that arbitration is not a product of "government-conferred authority," under U.S. law, it clearly is.

The UK Arbitration Act of 1996 provides no differently. Indeed, the UK Act provides *more* governmental regulation and oversight than does the FAA. The UK Act, which opens with the public policy that the "object of arbitration is to obtain a fair resolution of disputes by an impartial tribunal without unnecessary delay or expense," Arbitration Act 1996, c. 23, § 1, authorizes courts to stay legal proceedings in favor of arbitration, *id.* at § 9; to establish time schedules for the commencement of arbitrations, *id.* § 12; to remove an arbitrator for any number of reasons, *id.* § 24; to enforce the preemptory orders of the arbitral panel, *id.* § 42; to secure, at the behest of arbitrators, the attendance of witnesses, *id.* § 43; to determine questions of law raised in the arbitration, *id.* § 45; to enforce arbitration awards as judgments of the court, *id.* § 66; and otherwise to review arbitration awards, *id.* §§ 67–69. In addition, the UK Act regulates the composition of arbitral panels and the appointment to those panels, *id.* §§ 15, 16; it regulates the power to appoint expert witnesses, take testimony, and receive evidence, *id.* §§ 37, 38; and it otherwise provides a comprehensive regulation of arbitration and its procedures, through more than 100 different sections. Thus, even to a greater degree than arbitrations in the United States, UK arbitrations are sanctioned, regulated, and overseen by the government and its courts. Therefore again, contrary to Boeing's general assertion that arbitration is not a product of "government-conferred authority," under UK law, it also clearly is.

10

Thus, even if we were to apply the more restrictive definition of "foreign or international tribunal" adopted by *Bear Stearns* and *Biedermann* and now advanced by Boeing — that the term refers only to "entities acting with the authority of the State" — we would conclude that the UK arbitral panel charged with resolving the dispute between Servotronics and Rolls-Royce meets that definition.

Boeing advances a parade of horribles that it asserts would follow from applying § 1782(a) to arbitration proceedings, a prognostication that rests on its premise that such application of § 1782(a) would broaden the procedural scope of arbitration and make available in foreign arbitrations the full discovery process available under the Federal Rules of Civil Procedure. This would, Boeing contends, inject extraordinary delay and costs into arbitrations, thereby defeating their purpose and undermining parties' bargained-for method of dispute resolution.

But Boeing's argument rests on a misunderstanding of the function and scope of § 1782. Section 1782(a) is not designed to authorize full discovery in connection with a foreign arbitration proceeding, or any other proceeding of a foreign tribunal. Indeed, the provision does not even use the term "discovery." It is much more limited. The statute authorizes a U.S. district court to function in the stead of a foreign tribunal and, on behalf of that tribunal, to take statements and receive testimony and documents or other materials intended "for use" in the proceeding before the tribunal. Moreover, the process must be administered in the discretion of the district court — not the parties, as is the case in discovery — to assist in the limited role of receiving evidence for use in the foreign tribunal proceeding. As the *Intel* Court stated:

11

> We caution . . . that § 1782(a) authorizes, but does not require, a federal district court to provide judicial assistance to foreign or international tribunals or to interested persons in proceedings abroad.

542 U.S. at 247 (cleaned up). In contrast, the Federal Rules of Civil Procedure authorize parties, without approval of the court, to initiate and conduct discovery. And the scope of the discovery is not only for use in a proceeding but also to obtain all evidence relevant to a claim or defense, whether or not the evidence is used or admissible in the proceeding. *See* Fed. R. Civ. P. 26(b)(1).

Boeing also expresses concern that applying § 1782(a) to the UK arbitration proceeding would "create a conflict with the FAA by authorizing discovery that the FAA does not contemplate," thus undermining arbitrations governed by the FAA. Specifically, it claims that applying § 1782(a) would broaden "discovery" or access to information in foreign arbitrations to an extent not available in U.S. arbitrations, which would encourage the use of foreign arbitrations and diminish the benefits of arbitration under the FAA. Boeing points in particular to the aspects of § 1782(a) that allow "interested persons" to obtain information; that extend subpoena power beyond the district court where the arbitration is seated; and that authorize "non-parties to appear at depositions" and "provide the litigating parties with documents during pre-hearing discovery." This expansion, it argues, would unduly inflate costs and minimize efficiency, undermining the benefits provided by arbitration.

But this argument again reflects the same misunderstanding of the purpose and function of § 1782(a). In serving the role given under § 1782(a), a district court functions *effectively as a surrogate* for a foreign tribunal by taking testimony and statements *for use*

12

in the foreign proceeding. When viewed in this light, the district court functions no differently than does the foreign arbitral panel or, indeed, an American arbitral panel. The UK Arbitration Act of 1996 authorizes arbitrators to have the benefit of subpoenaed testimony and documents, with court enforcement, if necessary. *See* UK Act § 43. Similarly, under the FAA, American arbitrators have the benefit of subpoenaed testimony and documents through the enforcement of the courts. *See* 9 U.S.C. § 7; *see also* Fed. R. Civ. P. 45.

While § 1782 may expand the geographical scope of a foreign arbitral panel's authority beyond what that panel or an analogous American panel would otherwise have, that aspect of § 1782 is the result of Congress' purposeful decision to authorize U.S. district courts to provide assistance to foreign tribunals as a matter of public policy. If such a geographical extension were inappropriate, then Congress would not have enacted § 1782 at all. But it did — and for good reason — and the parties are bound by it. Moreover, any undue burdens that might result in this regard can and should be managed by the district court with the discretion conferred on it by § 1782(a). *See Intel*, 542 U.S. at 264–66.

Finally, we note that it is not clear that we are even permitted to consider § 1782's impact on the FAA, despite Boeing's urging. While the FAA provides a useful analogue for discussion, *Intel* "reject[ed] [the] suggestion that a § 1782(a) applicant must show that United States law would allow discovery in domestic litigation analogous to the foreign proceeding." 542 U.S. at 263. Indeed, § 1782 "is a provision for assistance to tribunals abroad [that] does not direct United States courts to engage in comparative analysis to determine whether analogous proceedings exist [in the United States]." *Id.* Section 1782

13

may apply even in some circumstances where "a foreign proceeding [has] no direct analogue in our legal system." *Id.* at 263 n.15.

At bottom, we conclude that the UK arbitral panel convened to address the dispute between Servotronics and Rolls-Royce is a "foreign or international tribunal" under § 1782(a) and, therefore, that the district court has authority to provide, in its discretion, assistance in connection with the UK arbitration. Accordingly, we reverse the district court's November 6, 2018 order and remand for the court to conduct further proceedings on Servotronics' § 1782 application.

Servotronics seeks to avoid remand, urging that we exercise the discretion conferred on the district court and order the court to issue the three subpoenas attached to its application. But because § 1782 confers discretion on the district courts in the first instance to manage any assistance that may be provided to a foreign tribunal, we decline to preempt that role. *See In re Application to Obtain Discovery*, 939 F.3d at 732 (reasoning that "[s]ome of the relevant facts and circumstances are not fully presented in the appellate record here and, even if they were, require judgment calls that a trial court is better positioned than an appellate court to make"); *Mees v. Buiter*, 793 F.3d 291, 301 (2d Cir. 2015) (reasoning that "the discretionary factors [set out in *Intel*] do not appear to us so one-sided that we should forgo the benefit of the district court's decision in the first instance); *Khrapunov v. Prosyankin*, 931 F.3d 922, 926 (9th Cir. 2019) (noting that "district courts are in the best position to review the details of a § 1782 request and to determine whether judicial assistance is justified" (cleaned up)).

REVERSED AND REMANDED

14