In the

# United States Court of Appeals

## For the Seventh Circuit

No. 19-1847

SERVOTRONICS, INC.,

*Petitioner-Appellant*,

*v.*

ROLLS-ROYCE PLC and
THE BOEING COMPANY,

*Intervenors-Appellees*.

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 18-cv-7187 — **Elaine E. Bucklo**, *Judge*.

ARGUED SEPTEMBER 19, 2019 — DECIDED SEPTEMBER 22, 2020

Before SYKES, *Chief Judge*, and HAMILTON and BRENNAN,
*Circuit Judges*.

SYKES, *Chief Judge*. Section 1782(a) of Title 28 authorizes
the district court to order a person within the district to give
testimony or produce documents "for use in a proceeding in
a foreign or international tribunal." This case asks whether a
private foreign arbitration is "a proceeding in a foreign or
international tribunal" within the meaning of the statute.

Two decades ago, the Second and Fifth Circuits answered this question "no," holding that § 1782(a) authorizes the district court to provide discovery assistance only to state-sponsored foreign tribunals, not private foreign arbitrations. *Nat'l Broad. Co. v. Bear Stearns & Co.*, 165 F.3d 184, 191 (2d Cir. 1999); *Republic of Kazakhstan v. Biedermann Int'l*, 168 F.3d 880, 883 (5th Cir. 1999).

More recently, the Sixth Circuit reached the opposite conclusion, *Abdul Latif Jameel Transp. Co. v. FedEx Corp.* (*In re Application to Obtain Discovery for Use in Foreign Proceedings*), 939 F.3d 710, 714 (6th Cir. 2019), and the Fourth Circuit agreed, *Servotronics, Inc. v. Boeing Co.*, 954 F.3d 209, 214 (4th Cir. 2020). We join the Second and Fifth Circuits and hold that § 1782(a) does not authorize the district court to compel discovery for use in a private foreign arbitration.

## I. Background

The backdrop for this case is an indemnification dispute over losses incurred when an aircraft engine caught fire during testing in South Carolina. Rolls-Royce PLC manufactured and sold a Trent 1000 engine to the Boeing Company for incorporation into a 787 Dreamliner aircraft. In January 2016 Boeing tested the new aircraft at its facility near the Charleston International Airport. A piece of metal became lodged in an engine valve, restricting the flow of fuel to the engine. As Boeing employees attempted to fix the problem, the engine caught fire, damaging the aircraft. Boeing demanded compensation from Rolls-Royce, and in 2017 the companies settled for $12 million. Rolls-Royce then sought indemnification from Servotronics, Inc., the manufacturer of the valve.

Under a long-term agreement between Rolls-Royce and Servotronics, any dispute not resolved through negotiation or mediation must be submitted to binding arbitration in Birmingham, England, under the rules of the Chartered Institute of Arbiters ("CIArb"). Negotiations did not bear fruit, so Rolls-Royce initiated arbitration with the CIArb. For convenience, the parties agreed to conduct the arbitration in London.

Servotronics thereafter filed an ex parte application in the U.S. District Court for the Northern District of Illinois asking the court to issue a subpoena compelling Boeing to produce documents for use in the London arbitration. The application invoked 28 U.S.C. § 1782(a), and the judge initially granted it and issued the requested subpoena. Rolls-Royce intervened and moved to quash the subpoena, arguing that § 1782(a) does not permit a district court to order discovery for use in a private foreign commercial arbitration. Boeing intervened and joined the motion to quash. The judge reversed course and quashed the subpoena. She agreed with Rolls-Royce and Boeing that § 1782(a) does not authorize the court to provide discovery assistance in private foreign arbitrations. Servotronics appealed. Rolls-Royce and Boeing jointly defend the judge's ruling.

## II. Discussion

### A. Statutory Framework

Sections 1781 and 1782 of Title 28 govern the district court's authority to provide discovery assistance in litigation in foreign and international tribunals. Section 1781 describes a formal judicial instrument known as a "letter rogatory"—a letter of request "issued by one court to a foreign court,

requesting that the foreign court (1) take evidence from a specific person within the foreign jurisdiction … and (2) return [it] … for use in a pending case." *Letter of Request*, BLACK'S LAW DICTIONARY (11th ed. 2019).

Letters rogatory are transmitted through diplomatic agencies; the statute provides that the State Department may, either "directly, or through suitable channels, … receive a letter rogatory issued, or request made, by a foreign or international tribunal, to transmit it to the tribunal, officer, or agency in the United States to whom it is addressed," and "receive and return it after execution." 28 U.S.C. § 1781(a)(1). The assistance is reciprocal; tribunals in the United States may issue letters rogatory through the State Department to a "foreign or international tribunal, officer, or agency."[1] *Id.* § 1781(a)(2).

Section 1782 works in tandem with and supplements § 1781, empowering the district court to order a person within the district to give testimony or provide evidence for

---

[1] A State Department regulation elaborates:

> In its broader sense in international practice, the term letters rogatory denotes a formal request from a court in which an action is pending, to a foreign court to perform some judicial act. Examples are requests for the taking of evidence, the serving of a summons, subpoena, or other legal notice, or the execution of a civil judgment. In United States usage, letters rogatory have been commonly utilized only for the purpose of obtaining evidence. Requests rest entirely upon the comity of courts toward each other, and customarily embody a promise of reciprocity.

22 C.F.R. § 92.54.

use in foreign litigation, either in response to a letter rogatory or on application of a person with an interest in the litigation. The key portion of the statute reads as follows:

> The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing *for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusation*.

*Id.* § 1782(a) (emphasis added). The link to § 1781 comes in the next sentence:

> The order may be made pursuant to a letter rogatory issued, or request made, by a foreign or international tribunal or upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court.

*Id.*

The statute also gives the judge the discretion to prescribe procedures for the collection of evidence, including the option to require adherence to the practice and procedure of the foreign country or international tribunal in question:

> The order may prescribe the practice and procedure, *which may be in whole or part the practice and procedure of the foreign country or the international tribunal*, for taking the testimony or statement or producing the document or other

thing. To the extent that the order does not pre-
scribe otherwise, the testimony or statement
shall be taken, and the document or other thing
produced, in accordance with the Federal
Rules of Civil Procedure.

*Id.* (emphasis added).

This case involves a § 1782(a) application filed by a party to a private commercial arbitration in the United Kingdom; there is no letter rogatory or request from a foreign or international tribunal. Rather, Servotronics invoked the statute by virtue of its status as an "interested person" in the London arbitration. The judge issued the subpoena ex parte but later quashed it after concluding that § 1782(a) does not authorize federal courts to provide discovery assistance to private foreign arbitrations. Servotronics takes issue with that interpretation of the statute, so we're asked to resolve a purely legal question and our review is de novo. *United States v. Titan Int'l, Inc.*, 811 F.3d 950, 952 (7th Cir. 2016).

## B. Applicability to Private Foreign Arbitrations

This is a question of first impression for our circuit, but several other circuits have addressed it and a split has recently emerged. The disagreement centers on the meaning of the statutory phrase "foreign or international tribunal"— or more particularly, the word "tribunal."

The Second Circuit was the first to confront the question more than 20 years ago. The court began by observing that although the phrase "foreign or international tribunal" does not unambiguously *exclude* private arbitral panels, neither does it unambiguously *include* them. *Nat'l Broad. Co.*, 165 F.3d at 188. After reviewing the statutory and legislative

history, the court concluded that the phrase, considered in context, is limited to state-sponsored foreign and international tribunals. *Id.* at 188–91. The court added that a contrary interpretation would create an inexplicable conflict with the Federal Arbitration Act. More specifically, a broad grant of federal-court authority to compel discovery in private foreign arbitrations "would stand in stark contrast to" the extremely limited judicial role in domestic arbitrations. *Id.* at 191. Accordingly, the court held that the statute does not authorize district courts to order discovery for use in private foreign arbitrations. *Id.*

The Fifth Circuit quickly agreed with that interpretation, *Biedermann Int'l*, 168 F.3d at 883, and that's where things stood for many years. No other appellate court weighed in until last year when the Sixth Circuit read the word "tribunal" broadly and held that the district court's authority to compel discovery for use in foreign litigation extends to private foreign arbitrations. *In re Application to Obtain Discovery*, 939 F.3d at 714.

A few months later, the Fourth Circuit aligned itself with the Sixth Circuit in a case involving a § 1782(a) application by Servotronics in a district court in South Carolina seeking discovery for use in this same London arbitration. *Servotronics*, 954 F.3d at 212–13. The Fourth Circuit's decision differs in one respect from the Sixth Circuit's; it rests in part on the court's view that contractual arbitration is the "product of government-conferred authority" both in the United Kingdom and the United States.[2] *Id.* at 214.

---

[2] That view strikes us as mistaken. Contractual arbitration is private dispute resolution. The source of a private arbitral panel's adjudicative

Finally, and more recently still, the Second Circuit reaffirmed its interpretation of § 1782 notwithstanding the contrary views of the Sixth and Fourth Circuits. *In re Guo*, 965 F.3d 96, 104 (2d Cir. 2020). The court also held that nothing in the Supreme Court's decision in *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004), required a course correction. *In re Guo*, 965 F.3d at 105–06. We'll return to *Intel* in a moment; for now, it's enough to say that the Court's decision does not tip the scales in favor of either side of the circuit split.

For several reasons, we side with the Second and Fifth Circuits in this interpretive debate. First, the word "tribunal" is not defined in the statute, and dictionary definitions do not unambiguously resolve whether private arbitral panels are included in the specific sense in which the term is used here. All definitions agree that the word "tribunal" means "a court," but some are more expansive, leaving room for both competing interpretations.

For example, in 1964 when the present-day version of the statute was adopted, *Black's Law Dictionary* defined "tribunal" as: "The seat of a judge; the place where he administers justice. The whole body of judges who compose a jurisdiction; a judicial court; the jurisdiction which the judges exercise." *Tribunal*, BLACK'S LAW DICTIONARY (4th ed. 1951). That definition appears to exclude private arbitral panels. Today the legal definition of "tribunal" is broader: "A court

_____

authority is found in the parties' contract, not a governmental grant of power. A private arbitral body does not exercise governmental or quasi-governmental authority. But we need not explore this point further. No one here argues that arbitration in the United Kingdom (or the United States) is the product of government-conferred authority.

of justice or other adjudicatory body." *Tribunal*, BLACK'S LAW DICTIONARY (11th ed. 2019).

Nonlegal definitions are similar. *See, e.g.*, *Tribunal*, THE CONCISE OXFORD DICTIONARY OF CURRENT ENGLISH (5th ed. 1964) (defining "tribunal" as "[j]udgement-seat … ; court of justice"); *Tribunal*, WEBSTER'S NEW TWENTIETH CENTURY DICTIONARY (2d ed. 1964) (defining "tribunal" as "the seat of a judge; … a court of justice"); *Tribunal*, AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE (5th ed 2018) (defining "tribunal" as "[a] law court[;] … [a] committee or board appointed to adjudicate in a particular matter"); *Tribunal*, MERRIAM-WEBSTER'S DICTIONARY AND THESAURUS (2020) (defining "tribunal" as "the seat of a judge[;] a court of justice[;] something that decides or determines, [as in] the ~ of public opinion …").

In short, canvassing dictionary definitions is inconclusive. In both common and legal parlance, the phrase "foreign or international tribunal" can be understood to mean only state-sponsored tribunals, but it also can be understood to include private arbitration panels. Both interpretations are plausible.

## C.  Statutory Context

As always, context is key to unlocking meaning. After all, statutory words and phrases "cannot be construed in a vacuum. … It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." *Home Depot U.S.A., Inc. v. Jackson*, 139 S. Ct. 1743, 1748 (2019) (quoting *Davis v. Mich. Dep't of Treasury*, 489 U.S. 803, 809 (1989)). Once we situate the word "tribunal" in its

proper statutory context, the more expansive reading of the term—the one that includes private arbitrations—becomes far less plausible.

As we've noted, the language of present-day § 1782 dates to 1964. *See Intel*, 542 U.S. at 247–49 (describing the statutory history of § 1782). The text was proposed by the Commission on International Rules of Judicial Procedure, a study group created by Congress in 1958 with the following statutory charge:

> The Commission shall investigate and study existing practices of judicial assistance and co-operation between the United States and for-eign countries with a view to achieving improvements. To the end that procedures necessary or incidental to the conduct and set-tlement of litigation in State and Federal courts and quasi-judicial agencies which involve the performance of acts in foreign territory, such as the service of judicial documents, the obtaining of evidence, and the proof of foreign law, may be more readily ascertainable, efficient, eco-nomical, and expeditious, and that the proce-dures of our State and Federal tribunals for the rendering of assistance to foreign courts and quasi-judicial agencies be similarly improved, the Commission shall—
>
> > (a) draft for the assistance of the Secre-tary of State international agreements to be negotiated by him;

(b) draft and recommend to the President any necessary legislation;

(c) recommend to the President such other action as may appear advisable to improve and codify international practice in civil, criminal, and administrative proceedings; and

(d) perform such other related duties as the President may assign.

Act of Sept. 2, 1958, Pub. L. No. 85-906, § 2, 72 Stat. 1743, 1743. Noticeably absent from this statutory charge is any instruction to study and recommend improvements in judicial assistance to private foreign arbitration.

"Six years later, in 1964, Congress unanimously adopted legislation recommended by the Rules Commission," which "included a complete revision of § 1782." *Intel*, 542 U.S. at 248; Act of Oct. 3, 1964, Pub. L. No. 88-619, § 9, 78 Stat. 995, 997. The legislation also revised 28 U.S.C. § 1696, pertaining to service of process in foreign litigation, and § 1781, regarding letters rogatory. Act of Oct. 3, § 4, 78 Stat. 995; *id*. § 8, 78 Stat. 996. All three statutes use the identical phrase "foreign or international tribunal" to describe the object of the district court's litigation assistance.

Identical words or phrases used in different parts of the same statute (or related statutes) are presumed to have the same meaning. *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S. 71, 86 (2006). Service-of-process assistance and letters rogatory—governed by §§ 1696 and 1781—are matters of comity between governments, which suggests that the phrase "foreign or international tribunal" as used in

this statutory scheme means state-sponsored tribunals and does not include private arbitration panels.

Within § 1782(a) itself, the word "tribunal" appears three times—first in the operative sentence authorizing the district court to order discovery "for use in a proceeding in a foreign or international tribunal," and again in the next sentence, which authorizes the court to act on a letter rogatory issued by "a foreign or international tribunal." Two sentences later the word "tribunal" appears again where the statute provides that the court's discovery order "may prescribe the practice and procedure, which may be in whole or part the *practice and procedure of the foreign country or the international tribunal*." (Emphasis added.)

The highlighted phrase parallels the earlier phrase "foreign or international tribunal." Harmonizing this statutory language and reading it as a coherent whole suggests that a more limited reading of § 1782(a) is probably the correct one: a "foreign tribunal" in this context means a governmental, administrative, or quasi-governmental tribunal operating pursuant to the foreign country's "practice and procedure." Private foreign arbitrations, in other words, are not included.

## D. Conflict with the Federal Arbitration Act

This narrower understanding of the word "tribunal" avoids a serious conflict with the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1–15 (amended 1988). We "interpret Congress's statutes as a harmonious whole rather than at war with one another." *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1619 (2018). When a statute is susceptible of two interpretations, one that creates a conflict with another statute and another that avoids it, we have an obligation to avoid

the conflict "if such a construction is possible and reasonable." *Precision Indus., Inc. v. Qualitech Steel SBQ, LLC*, 327 F.3d 537, 544 (7th Cir. 2003). Applying this principle to the relationship between the FAA and § 1782 confirms that the latter does not apply to private foreign arbitrations.

The discovery assistance authorized by § 1782(a) is notably broader than that authorized by the FAA. Most significantly, the FAA permits the arbitration panel—but not the parties—to summon witnesses before the panel to testify and produce documents and to petition the district court to enforce the summons. 9 U.S.C. § 7. Section 1782(a), in contrast, permits both foreign tribunals *and litigants* (as well as other "interested persons") to obtain discovery orders from district courts. If § 1782(a) were construed to permit federal courts to provide discovery assistance in private foreign arbitrations, then litigants in foreign arbitrations would have access to much more expansive discovery than litigants in domestic arbitrations. It's hard to conjure a rationale for giving parties to private foreign arbitrations such broad access to federal-court discovery assistance in the United States while precluding such discovery assistance for litigants in domestic arbitrations.

Moreover, the FAA applies to some foreign arbitrations under implementing legislation for the Convention on the Recognition and Enforcement of Foreign Arbitral Awards and the Inter-American Convention on International Commercial Arbitration. *See* 9 U.S.C. §§ 201–208, 301–307; *Nat'l Broad. Co.*, 165 F.3d at 187. Reading § 1782(a) broadly to apply to all private foreign arbitrations creates a direct conflict with the Act for this subset of foreign arbitrations.

In sum, what the text and context of § 1782(a) strongly suggest is confirmed by the principle of avoiding a collision with another statute: a "foreign or international tribunal" within the meaning of § 1782(a) is a state-sponsored, public, or quasi-governmental tribunal.

### E. *Intel* and Legislative History

*Intel* was the Supreme Court's first—and to date only— occasion to address § 1782(a). The Court held that the statute may be invoked by a nonlitigant "interested person," *Intel*, 542 U.S. at 256–57, and also that a foreign proceeding need not be pending or imminent but only "within reasonable contemplation," *id.* at 259. And the Court clarified that § 1782(a) does not contain an implicit foreign-discoverability requirement. *Id.* at 260–63. Finally, and most pertinent here, the Court considered whether the proceeding at issue in the case—before the Directorate General for Competition of the Commission of the European Communities—was a "proceeding in a foreign or international tribunal." The Court had no difficulty concluding that the Directorate, as a public agency with quasi-judicial authority, qualified as a "foreign tribunal" within the meaning of § 1782(a).

Along the way to this last holding, the Court sketched the legislative history of § 1782 and as a part of its discussion quoted from a footnote in a law-review article written by the law professor who served as the reporter for the commission that proposed what eventually became § 1782. This passage in *Intel* has taken on outsized significance here, so we quote it in full: "The term 'tribunal' [in § 1782(a)] … includes investigating magistrates, administrative and *arbitral tribunals*, and quasi-judicial agencies, as well as conventional civil, commercial, criminal, and administrative courts." *Id.* at

258 (emphasis added) (quoting Hans Smit, *International Litigation Under the United States Code*, 65 COLUM. L. REV. 1015, 1026 n.71 (1965)).

Servotronics relies heavily on the professor's inclusion of "arbitral tribunals" in this footnoted list, but this reliance is misplaced. The quotation from the professor's article appears in the Court's opinion as part of an explanatory parenthetical. There is no indication that the phrase "arbitral tribunals" includes *private* arbitral tribunals. Even if there were such an indication, we see no reason to believe that the Court, by quoting a law-review article in a passing parenthetical, was signaling its view that § 1782(a) authorizes district courts to provide discovery assistance in private foreign arbitrations.

In short, this passage cannot bear the weight Servotronics places on it. For the foregoing reasons, we join the Second and Fifth Circuits in concluding that § 1782(a) does not authorize the district courts to compel discovery for use in private foreign arbitrations.

AFFIRMED